# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| DAVID PEARSON, individually, | § | |
| CYNTHIA PEARSON, individually, | § | |
| BAILEY PEARSON, as next friend of | § | |
| Z.P., and VALERIE CANNADAY, as | § | |
| Personal Representative of the Estate of | § | |
| Zachary David Pearson, | § | |
| | § | Civil Action No. 3:22-CV-2597-K |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| CHARLES GAGE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Charles Gage's Motion to Dismiss Original Complaint (Doc. No. 8) and Brief in Support (Doc. No. 9) (together, the "Motion"). Plaintiffs filed a Response (Doc. No. 15) in opposition and Brief in Support (Doc. No. 16) (together, the "Response"). Defendant filed a Reply (Doc. No. 17). The Court has carefully considered the Motion, the Response, the Reply, the relevant portions of the record, and the applicable law. The Court **DENIES** the Motion because (1) Plaintiffs pled a facially plausible claim against Defendant for violation of the Fourth Amendment with his alleged use of deadly force that was clearly excessive and clearly unreasonable and (2) Plaintiffs pled sufficient facts which, if true, overcome Defendant's qualified immunity defense.

1

I.     **Factual Background**

The following facts are alleged in the Original Complaint (Doc. No. 1) filed by Plaintiffs David Pearson, Cynthia Pearson, Bailey Pearson as next friend of Z.P., and Valerie Cannaday, as the Personal Representative of the Estate of Zachary David Pearson (together, "Plaintiffs").   On December 5, 2019, Defendant Charles Gage ("Defendant"), a reserve officer with the City of Jefferson Police Department, was working off-duty as a traffic control officer on a highway construction project on Interstate Highway 635 ("I-635"), along with non-party Joshua Hibschman ("Hibschman"), an off-duty police officer with the Seven Points Police Department. Doc. No. 1 at ¶¶ 9-11, 13.  That day, the construction area had not been adequately barricaded and Zachary David Person ("Zach") was able to enter the construction zone around 1:30 a.m. as he was driving eastbound on I-635.  *Id.* at ¶¶ 15-16. Defendant and Hibschman both observed Zach drive his truck into the construction area where equipment and workers were located, but neither tried to stop Zach as he continued driving through the area.  *Id.* at ¶¶ 17-18.  At some point thereafter, Defendant and Hibschman were told that Zach's truck was not an authorized vehicle and that the truck struck equipment and a construction worker, which neither Defendant nor Hibschman personally observed. *Id.* at ¶¶ 19, 21.  At that point, Defendant and Hibschman began pursuit of Zach in an attempt to stop him and question him about what had occurred. *Id.* at ¶ 20.  Both Defendant and Hibschman

were driving their personal vehicles while working traffic control; they were not driving police department vehicles, and only Hibschman's truck had "POLICE" on the rear tailgate. *Id.* at ¶¶ 22-25.

Defendant and Hibschman had two encounters with Zach. First, Defendant and Hibschman were able to block Zach's truck from the front and from behind and all three vehicles stopped. *Id.* at ¶¶ 26, 28-29. The three men got out of their respective vehicles, then Zach walked towards Hibschman, who was dressed in plain clothes, and asked what was happening. *Id.* at ¶¶ 30-33. Zach did not assault or threaten to assault either Defendant or Hibschman, but Hibschman shoved Zach twice. *Id.* at ¶ 36. Defendant then yelled to get Zach's attention, sprayed him in the face with pepper spray, and struck Zach twice with a metal baton. *Id.* at ¶¶ 38-39, 44. Through all of this, Zach never physically engaged with or threatened either Defendant or Hibschman. *Id.* at ¶¶ 40-45. Zach ran back to his truck to drive away, but Defendant chased Zach, smashed the driver's side window with his metal baton, and tried to pull Zach unsuccessfully from his truck. *Id.* at ¶¶ 45-47.

Zach was able to drive away, and Defendant and Hibschman again followed him in their vehicles. *Id.* at ¶¶ 48-49. At some point, Zach pulled over again, of his own volition, stopped his truck, and put it in park. *Id.* at ¶¶ 50, 125. Defendant pulled his own truck diagonally across the driver's-side front of Zach's truck and struck the corner of Zach's driver's door with the passenger-side front of Defendant's truck.

*Id.* at ¶ 51.  Defendant positioned his truck in such a way that Zach was not able to drive away.  *Id.* at ¶ 52.  Defendant got out of his truck and, standing behind the toolbox in the back of his truck on the driver's-side, drew his Glock 9mm pistol and pointed it at Zach's driver's side window while he was still seated inside his truck.  *Id.* at ¶¶ 53, 56-57.  Hibschman stopped his own truck behind Zach's, blocking Zach from leaving.  *Id.* at ¶¶ 58-59.  Defendant began firing his gun at Zach while retreating to the back of his own truck.  *Id.* at ¶¶ 60-62; *see also id.* at ¶¶ 70, 74-75.  While he was shooting, Defendant was perpendicular to and behind the driver's side window of Zach's truck.  *Id.* at ¶ 63; *see also id.* at ¶ 70.  As Hibschman got out of his vehicle, he heard gun shots and observed Defendant was sideways with Zach.  *Id.* at ¶ 64; *see also id.* at ¶ 70.  Defendant fired nine bullets in total, hitting Zach five times.  *Id.* at ¶ 68.  Zach was alive and gasping for breath when Defendant and Hibschman pulled him out of his truck and handcuffed him.  *Id.* at ¶ 130.  EMS responded and transported him to a hospital where he died, approximately 40 minutes later, as a result of gun shot wounds.  *Id.* at ¶¶ 132-136; *see id.* at ¶ 138.  The shooting occurred at 1:42 a.m., approximately 12 minutes after Zach entered the construction area.  *Id.* at ¶ 134; *see also id.* at ¶ 14.

During the investigation by the Mesquite Police Department, Defendant told a detective that he intended to arrest Zach for aggravated assault.  *Id.*  at ¶ 137.  Defendant also told a Mesquite police officer that he shot Zach because Zach was

trying to hit Defendant with Zach's truck, a story Defendant fabricated to justify killing Zach. *Id.* at ¶¶ 89-90. Defendant also tried to coordinate a false version of that night's events with Hibschman, which included a storyline that Zach tried to ram his truck into Defendant. *Id.* at ¶¶ 98-99, 104, 113; *see also id.* at ¶¶ 91-97. The drastic discrepancies in the versions Defendant and Hibschman gave respectively show that their versions of the events are lies. *Id.* at ¶¶ 105-116, 123-126.

Defendant was never in the path of Zach's truck, that was completely stopped and in park before Defendant shot Zach. *Id.* at ¶¶ 65, 71, 73, 76, 127; *see also id.* at ¶ 70. Defendant was never in a position of danger, but was actually moving from one position of safety to an even safer position as he continued to shoot at Zach. *Id.* at ¶¶ 67, 76; *see also id.* at ¶¶70-79. Defendant does not claim he was in front of Zach's truck, and the location of the bullet casings at the scene bear this out. *Id.* at ¶ 79. Defendant was firing his gun "from a position of safety at the side or slightly behind Zach's truck" which is supported by Hibschman's own observation and statements to investigators, the location of the shell casings and various bullet holes in Zach's truck, and Zach's autopsy report which describes the bullet trajectory for each of the five gunshot wounds. *Id.* at ¶¶ 81-82; *see also id.* at ¶¶ 62, 64, 70, 72, 73, 79, 84-88.

Plaintiffs filed suit against Defendant asserting claims pursuant to 42 U.S.C. § 1983 for violating the Fourth Amendment by Defendant's use of excessive deadly force and for wrongful death, as well as a survival action brought by Plaintiff Valerie

Cannaday, the Personal Representative of the Estate of Zachary David Parson.  *See generally* Doc. No. 1.  Defendant filed this Motion to Dismiss under Rule 12(b)(6) for failure to state a claim and also invoking qualified immunity.

## II.    Legal Standards and Applicable Law

### A.    Rule 12(b)(6)

In considering a Rule 12(b)(6) motion, the court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  A well-pled complaint must allege facts upon which the claims are based, not simply recite in a conclusory fashion the elements of a cause of action.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court "accept[s] all well-pleaded facts as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Morgan v. Swanson*, 659 F.3d 359, 370  (5th Cir. 2011) (en banc).  The court does not accept as true "a number of categories of statements, including legal conclusions; mere 'labels'; 'threadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'"  *Id.* (cleaned up) (quoting *Aschcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).  The claim must be pled with "facial plausibility" meaning the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 570 (facts as alleged must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible.").

6

"Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

"A district court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6)." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). However, the district court may consider documents attached to the motion to dismiss when those documents "are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *accord Villarreal*, 814 F.3d at 766.

### B.      Section 1983 and Qualified Immunity

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

A public official can invoke the defense of qualified immunity to avoid liability when sued in his individual capacity for the performance of his duties. *See Rich*, 920

F.3d at 294.  Qualified immunity shields a public official but only "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Roque v. Harvel*, 995 F.3d 325, 331 (5th Cir. 2021) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)); *see also Morgan*, 659 F.3d at 370 ("The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal.").  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law,' so [courts] do not deny immunity unless 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Morgan*, 659 F.3d at 371 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) and *Aschcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2083 (2011)).

At the motion to dismiss stage, the defendant is entitled to qualified immunity unless the plaintiff meets his burden "to demonstrate the inapplicability of the defense." *Kelson*, 1 F.4th at 416.  To do so, the plaintiff must allege facts sufficient to plausibly show that (1) the defendant violated a constitutional right of the plaintiff and (2) the constitutional right was clearly established at the time of the alleged violation.  *Morgan*, 659 F.3d at 371 (citing *al-Kidd*, 563 U.S. at 735).  To find that the constitutional right was clearly established, the court "must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity."  *Id.* at 371-72

(quoting *al-Kidd*, 563 U.S. at 742).  While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations omitted) (quoting *al-Kidd*, 563 U.S. at 741).

### C.     Fourth Amendment

The Fourth Amendment guarantees the right to be free from unreasonable seizures, which includes the use of excessive or unreasonable force by a law enforcement officer during an arrest, an investigatory stop, or other "seizure".  *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Roque*, 993 F.3d at 332.  An excessive force claim requires the plaintiff to show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  *Roque*, 993 F.3d at 332-33.  The reasonableness of an officer's use of force is to be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396; *accord Roque*, 993 F.3d at 333.  This reasonableness standard demands "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Harmon*, 16 F.4th at 1163 (internal quotations omitted) (quoting *Graham*, 490 U.S. at 396-97).  But the reasonableness inquiry is objective as the officer's actions are judged "in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *see al-Kidd*, 563 U.S. at 736 ("This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts[.]").

The use of deadly force "is considered excessive and unreasonable 'unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Roque*, 993 F.3d at 333 (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)). The use of force may be reasonable one minute, then, in the next instant, the justification for such force no longer exists. *Id.*

## III. Analysis

In the Motion, Defendant moves to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim and also because he is entitled to qualified immunity. Defendant argues that Zach's own conduct "removes the incident from excessive force and also supports the qualified immunity of Defendant." Doc. No. 9 at 5. The gist of Defendant's argument is that Plaintiffs fail to respond to the version of facts set forth by Defendant in his Answer (Doc. No. 10) and, for that reason, Plaintiffs fail to plead their Fourth Amendment excessive force claim with plausibility and fail to overcome his qualified immunity defense. Doc. No. 9 at 5-6. Plaintiffs respond with detailed argument that the well-pled allegations sufficiently support a reasonable inference by the Court that Defendant's use of deadly force was clearly

excessive and unreasonable because Zach did not pose a threat of harm to anyone. *See* Doc. No. 16 at 12-17.  Plaintiffs also respond that the qualified immunity defense is overcome by their factual allegations which plausibly show that Defendant used excessive deadly force in violation of the Fourth Amendment when Zach posed no threat of harm, serious or otherwise, to Defendant or anyone else and this was clearly established by case law as it existed at the time of the incident.  *Id.* at 17-25. Defendant filed a "Reply to Plaintiffs' Response to Defendant's Motion to Dismiss", but it is virtually identical to his Brief in Support (Doc. No. 9) of his Motion, save some minor changes to the applicable legal standards and the footnotes, and offers no substantive responsive argument to Plaintiffs' Response.

Other than a cursory statement that he "moves to dismiss all claims" for failure to state a claim, Defendant makes no argument that Plaintiffs fail to state their wrongful death claim under § 1983 or the survival action.  Doc.  No. 8 at 1; *see also* Doc. No. 9 at 6 ("Accordingly, the Complaint fails to properly plead a claim for excessive force; fails to overcome Defendant's qualified immunity defense and should be dismissed pursuant to F.R.C.P. 12(b)(6).").  For that reason, the Court does not address the sufficiency of those claims and they are, therefore, deemed sufficiently pled.

### A.    Excessive Force Claim Sufficiently Pled

The first element of an excessive force claim, injury, is unequivocally satisfied

as Plaintiffs allege Defendant fired nine times into the driver's side window, hitting Zach five times which caused his death a short time later.  Doc. No. 1 at ¶¶ 127-136, 138; *see id.* at 2.  The Court addresses the second and third elements of the excessive force claim together—whether Zach's death resulted directly and only from Defendant's use of clearly excessive force and whether this excessive force was clearly unreasonable.  *See Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021) (the questions of whether the force used was "excessive" and also "unreasonable" are "often intertwined.") (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

The Court considers several factors in determining whether the force was "unreasonable" and "excessive", including "the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Harmon*, 16 F.4th at 1163 (quoting *Graham*, 490 U.S. at 396).  "The threat-of-harm factor typically predominates the analysis when deadly force has been deployed." *Id.*; *accord Crane v. City of Arlington, Tex.*, 50 F.4th 453, 463 (5th Cir. 2022).  Deadly force may indeed be reasonable and not excessive "where the officer has probable cause to believe the suspect poses a threat of serious physical harm, either to the officer or to others[.]" *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *accord Roque*, 993 F.3d at 333.  However, it is well-established that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11.  A plaintiff's claim of excessive

12

force is determined under the Fourth Amendment's "'objective reasonableness'" standard. *Brousseau v. Haugen,* 543 U.S. 194, 197 (2004) (citing *Garner*, 471 U.S. 1 and *Graham*, 490 U.S. 386). "Excessive-force claims are 'necessarily fact-intensive,' so [the court] must 'examine the totality of the circumstances to determine whether an officer's actions were objectively unreasonable.'" *Roque*, 993 F.3d at 333.

The Court, taking the well-pled allegations as true and viewing them in the light most favorable to Plaintiffs, finds that Plaintiffs pled sufficient facts to reasonably infer that Defendant's use of deadly force was excessive and unreasonable. The Court reviews the factual allegations addressing only the incident in which Defendant employed deadly force and not to any interaction or conduct prior to that moment. *See Crane*, 50 F.4th at 466 ("[O]ur precedent dictates that the threat be examined only at the moment deadly force is used" and whether, in that moment, "there was a reasonable need for deadly force.") (citing *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014)). Plaintiffs allege that, at the time of the shooting, Zach was inside his truck which he had stopped and put into park prior to the shooting. *Id.* at ¶¶ 50, 125, 127. The position of Defendant's truck and Hibschman's truck in relation to Zach's truck prevented Zach from being able to drive away in either direction. *See, e.g.*, Doc. No. 1 at ¶¶ 52, 58-59. When he began shooting, Defendant was behind the toolbox of his truck, in a position of safety, and he progressively moved into even safer positions further behind his truck as he continued shooting. *Id.* at ¶¶ 57, 60, 62-65,

13

67, 71-73.  Plaintiffs allege that Defendant "was not in harm's way" when he began shooting and was "not in the path of Zach's truck" or any other position of danger. *Id.* at ¶¶ 65-66, 73, 76, 79, 127.  Plaintiffs further allege that all five bullets struck Zach from behind.  *Id.* at ¶¶ 81-82; *see also id.* at ¶¶ 62, 64, 70, 72-73, 75, 79, 84-88. Zach died from these gunshot wounds.  *Id.* at ¶¶ 136, 138.  Thus, based on these allegations, Zach was not a threat to anyone, including Defendant or Hibschman.

The Court carefully considered, "from the perspective of a reasonable officer on the scene," the totality of the facts and circumstances of this case.  *Graham*, 490 U.S. at 396 (the totality of the circumstances of each case includes consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").  Given Plaintiffs' well-pled allegations which are taken as true and viewed most favorable to Plaintiffs, Zach was shot from behind while sitting in his parked truck, which he had voluntarily pulled over after being pursued by Defendant in an unmarked truck for entering a construction area and suspicion of striking construction equipment and a construction worker, without attempting to flee or otherwise move his truck or threatening any violence, when he was shot and killed by Defendant who was positioned safely behind his own truck.  Defendant could not have reasonably believed Zach posed a threat of serious harm to him, Officer Hibschman, or others when Defendant shot at Zach nine times with five of those

14

bullets hitting him and ultimately killing him.  The Court concludes that, judged from the perspective of a reasonable officer on the scene, Defendant could not have reasonably believed that Zach posed a threat of serious harm to Defendant or another thereby justifying the use of deadly force.  *See Graham*, 490 U.S. at 396; *Roque*, 993 F.3d at 333; *see also Harmon*, 16 F.4th at 1163 ("The threat-of-harm factor typically predominates the analysis when deadly force has been deployed.").

Defendant argues that Plaintiffs' "Complaint does not address [Zach's] assaultive conduct which both removes the incident from excessive force and also supports the qualified immunity of Defendant."  Doc. No. 9 at 5.  Defendant then asserts that "Plaintiff [sic] fails to factually support his [sic] conclusory claim that decedent was not assaulting the officers and did not present a threat."  *Id.* at 5-6. Defendant contends that Plaintiffs fail to rebut or otherwise address his different version of the events that night as set forth in his Answer.  *See id.*  According to Defendant, Plaintiffs' failure to do so renders their allegations merely conclusory and not facially plausible such that the Court could reasonably infer Defendant used force which was clearly excessive and clearly unreasonable.  *Id.*  "At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

By his argument, Defendant appears to suggest that Plaintiffs have some sort of burden on a Rule 12(b)(6) motion to respond to or rebut Defendant's version of

the facts in his Answer.  This suggestion runs counter to the law regarding the applicable standard in determining a Rule 12(b)(6) motion to dismiss.  *See, e.g., Villarreal*, 814 F.3d at 766 (in reviewing a motion under Rule 12(b)(6), the court considers the complaint and the allegations therein which are taken in the plaintiff's favor, and may consider "documents that a defendant attached to a motion to dismiss" but only if they are referred to in the complaint and are central to the plaintiff's claims); *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n. 9 (5th Cir. 2012) (the court may not consider a document that is part of the record but not referenced in the plaintiff's complaint and not attached to the Rule 12(b)(6) motion in its determination); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (the court looks to the pleadings, which include the complaint and any documents attached to it, in deciding a Rule 12(b)(6) motion, and a document attached to the motion is "considered part of the pleadings" only if the document is "referred to the in the plaintiff's complaint and [is] central to [the plaintiff's] claims."); *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991) (the court must review only the pleading attacked in the motion to dismiss); *Ramos v. Taylor*, — F. Supp. 3d —, 2022 WL 17815128, at *4 (W.D. Tex. 2022) ("The general rule is that courts should consider a motion to dismiss based on the four-corners of the plaintiff's pleadings, not the evidence that Defendants may seek to introduce in response.").  This argument was expressly rejected by a judge in

this District over six years ago in an excessive force case. *Arevalo v. City of Farmers Branch, Tex.*, 3:16-CV-1540-D, 2017 WL 1153230 (N.D. Tex. Mar. 28, 2017)(Fitzwater, J).  In determining the officer-defendant's motion to dismiss, Judge Fitzwater commented that the defendant appeared to argue the plaintiff had "an obligation . . . to specifically address [the defendant's] version of what occurred, including the circumstances he alleges were confronting him at the time he used force[.]"  *Id.* at * 8.  Judge Fitzwater dismissed this suggestion in short order, stating that the defendant-officer did "not demonstrate that [the plaintiff] shoulders such an obligation, which would essentially require that [the plaintiff] rebut [the defendant's] version of the events."  *Id.*  Confirming the well-established standard under Rule 12(b)(6) controlled his analysis, Judge Fitzwater held that the court "must infer that unpleaded allegations" in the defendant's answer "would not render the claim implausible or establish the defense."  *Id.*  To be sure, "merely offering a different version of the facts is insufficient to prevail on a Rule 12(b)(6) motion."  *Id.*

At the motion to dismiss stage, the Court is not concerned with deciding factual disputes, which is precisely what Defendant suggests.  *See Ramos*, — F. Supp. 3d —, 2022 WL 17815128, at *6 ("At this early stage of the litigation, the Court does not need to delve into the contested facts of [defendant's] actions in the moments before [decedent's] death.").  The Court considers only whether Plaintiffs allege sufficient factual content, taken in the light most favorable to them, such that their excessive

force claim is facially plausible. *Iqbal*, 556 U.S.at 678. This does not change simply because Defendant asserts a defense of qualified immunity.

The Court finds that Plaintiffs pled a facially plausible excessive force claim against Defendant. Having considered the totality of the circumstances from the perspective of a reasonable officer under those same circumstances, Defendant could not have reasonably believed that Zach posed a threat of serious physical harm to Defendant or others; therefore, Defendant's use of deadly force against Zach is clearly excessive and clearly unreasonable. *See Graham*, 490 U.S. at 396; *Garner*, 471 U.S. at 11. Thus, Defendant's Motion to Dismiss Plaintiff's excessive force claim under Rule 12(b)(6) for failure to state a claim is **denied**.

### B.    Qualified Immunity Defense Overcome

In deciding whether Defendant is entitled to qualified immunity, the Court inquires whether Plaintiffs have alleged sufficient facts to plausibly show (1) that Defendant's conduct violated a constitutional right; and (2) the constitutional right was clearly established at the time. *See Morgan*, 659 F.3d at 371 (citing *al-Kidd*, 563 U.S. at 735). For the same reasons outlined in the previous section regarding the plausibility of the excessive force claim, the Court finds the first prong of the qualified immunity inquiry is satisfied—the allegations allow the Court to reasonably infer that any reasonable officer in these same circumstances as Defendant would have believed that Defendant's use of excessive and unreasonable deadly force violated Zach's

18

Fourth Amendment right.

The Court finds the second prong of the qualified immunity analysis, whether the constitutional right was clearly established at the time of the violation, is also met. *See Lytle v. Bexar Cty, Tex.*, 560 F.3d 404, 417 (5th Cir. 2009). In determining this second factor, the Court "must ask whether the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official would understand that what he is doing violates the law.'" *Morgan*, 659 F.3d at 371 (cleaned up). "[T]he central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Lytle*, 560 F.3d at 417 (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

"It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Id.*; *see Garner*, 471 U.S. at 11. The Fifth Circuit affirmed that this principle applies "both as a general matter and in the more specific context of shooting a suspect fleeing in a motor vehicle." *Id.* (internal citations omitted). While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (internal quotations omitted)

(quoting *al-Kidd*, 563 U.S. at 741).  In *Arevalo*, Judge Fitzwater, faced with similar facts to those before this Court, found the defendant-officer's conduct was objectively unreasonable under the clearly established law at the time of the shooting based on the following factual allegations: at the time of the shooting, the victim posed no risk of immediate physical harm to the defendant; the victim's arms were over his head; the victim never displayed a weapon prior to being shot; the victim made no verbal threats to defendant or others; the victim did not act aggressively towards defendant or another at that time; the victim was sitting inside a stopped car when the defendant shot him; the victim was not attempting to flee at the time Defendant shot him; the defendant was standing in the road and was not at risk of being hit by the car.  *Arevalo*, 2017 WL 1153230, at *8.

In this case, Plaintiffs pled sufficient facts, as previously discussed in detail, which permit the Court to plausibly infer that Zach, who was sitting in a stopped car, and was not attempting to flee, did not pose a threat of serious harm to Defendant or others when Defendant shot Zach.  *See, e.g.,* Compl.  at ¶¶ 50, 52, 57-60, 62-67,72-73, 76, 122, 125, 127; *see also id.* at ¶¶ 104-116, 123-124.  At the time of the shooting, every reasonable officer would understand that the use of deadly force by Defendant under these circumstances is unreasonable and excessive.  *See Garner*, 471 U.S. at 11; *Morgan*, 659 F.3d at 371; *Arevalo*, 2017 WL 1153230, at *8; *see also Lytle*, 560 F.3d at 417-18 (law was clearly established in 2006 that it is "unreasonable for a police officer

to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others).  The Court concludes that Defendant was on notice at the time he shot Zach that his conduct was unconstitutional.  *See Flores v. City of Palacios*, 381 F.3d 391, 401 (5th Cir. 2004) (the use of deadly force "would only be justified by a reasonable belief that he or the public was in imminent danger."); *see also Aguirre*, 995 F.3d at 415 (internal quotations omitted) ("The central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.").  .

The Court concludes Plaintiffs allege facts sufficient to plausibly show (1) that Defendant violated Zach's Fourth Amendment right with his use of deadly force that was unreasonable and excessive and (2) that the law was clearly established at the time of the shooting that Defendant's use of unreasonable, excessive deadly force violated the Fourth Amendment because Zach did not pose a threat of serious harm to Defendant or others.  Plaintiffs sufficiently allege facts which overcome Defendant's qualified immunity defense at the motion to dismiss stage.  The Court **denies** the Motion to Dismiss on this basis that Defendant is entitled to qualified immunity.

## C.    Rule 7(a) Reply Unnecessary

In two footnotes, Defendant asks the Court to order a Rule 7(a) reply if

Plaintiffs' claims are not dismissed.  Doc. No. 9 at 5 n. 37 ("Or, a Rule 7a Reply should be ordered."); 6 n. 40 ("Or, that a Rule 7a Reply be ordered.").  A district court "may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995).  But such a reply is not necessary when the pleading standard is satisfied in "that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Id.* at 1434.  The Court determines that a Rule 7(a) reply here is unnecessary.  Plaintiffs' Complaint, as previously explained in detail, is sufficiently pled to overcome Defendant's assertion of the qualified immunity defense at the motion to dismiss stage.  *See Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).  The Court does not need greater detail to assist in making this determination.  *See Parsons v. Marmarinos*, 2015 WL 5098807, at *6 (W.D. Tex. Aug. 31, 2015) ("Parsons has met his pleading burden. He has alleged sufficient factual material to raise the possibility that the Defendants are not entitled to the qualified immunity defense at the motion to dismiss stage, obviating the need for a Rule 7(a) reply.").

## IV.    Conclusion

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss in its

entirety.  Plaintiffs state a facially plausible claim for Defendant's use of excessive deadly force in violation of the Fourth Amendment.  Plaintiffs also allege sufficient facts to overcome Defendant's entitlement to qualified immunity at the pleading stage.

**SO ORDERED.**

Signed September 19th, 2023.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE